The next matter on our calendar is Juan Rodriguez-Depena v. Parts Authority. Mr. Hassan, you're with us again. Yes, Your Honor. Your Honor, good morning. My name is Mr. Abdul Hassan. I'm the counsel for Plaintiff Appellant, Mr. Juan Rodriguez-Depena. Your Honor, for very much the same reasons, we believe that the order of compelling arbitration in this case should be reversed, first and foremost because it is inconsistent with the FLSA and it should be deemed non-arbitrable. The claims in this case should be deemed non-arbitrable under the FLSA. I go back to the road map provided by the Supreme Court in Barrington. Whether or not the facts were similar, the road map is still very, very useful. The first thing you determine and emphasize is the non-waivable nature of FLSA rights. The second thing you determine, whether or not arbitration adequately protects those rights or might result in a loss of those rights. Not will result, but might result in a loss of those rights. Here, in this case, even worse, you have a requirement that the plaintiff pay half the arbitrator's cost. Yeah, but that argument, all of that, the Supreme Court in Italian colors went a long, long way to making a non-argument now. I mean, the cost of getting into arbitration might still be there, but the relatively low level of FLSA claims as against the cost of being in arbitration, the Supreme Court went a long way towards negating, didn't it? I would respectfully disagree, and here is an area in which we need to clarify. Italian colors, I think, was an antitrust case or something of the kind. It was not an FLSA case. Under the antitrust statutes, there's no prohibition against a waiver, either through direct means or indirect means. There is such a prohibition, a longstanding one. From the 1940s to now, this Court's famous decision in Cheeks reemphasized that. As I said, this Court didn't say anything new in Cheeks. It merely reemphasized what was already the law, and it did so in dramatic fashion. So distinguish between antitrust claims. If, for example, the costs are too high and you lose your antitrust claim, there's nothing wrong with that. But if that very same thing happens in an FLSA case where you cannot vindicate your FLSA rights because of costs, the Supreme Court has never said that is proper. In fact, the only Supreme Court case dealing with arbitration under the FLSA rejected arbitration for very much the same reason under what we now call the effective vindication doctrine. So I think you go back to the point. The main distinction between this case and all those other cases is that we're dealing with the FLSA. In this circuit, as well as the high court, the FLSA is a uniquely protective statute. You can't waive the rights by accident, by burdening people's ability to exercise those rights. All of those might be okay outside the statute, but they're not okay within the statute. So for those who follow the roadmap, I would suggest that they're set out in Barantine. So, for example, the court said the standard of reviewing an erroneous decision. That has tremendous relevance to this case. We're dealing with independent contractual agreements, and when you agree to become an independent You've made this argument. Now let me ask you, and of course if we buy it, that's the end of it. If we don't buy it, are you making, did you make the argument that estoppel cannot apply here because the district court did not look with adequate care about the relationship? Oh, that and something else. They're claiming, you have a situation here where PARS Authority and Michigan Logistics, I think, they are distancing themselves from this plaintiff. They said we were not part of the agreement. They're not claiming to be part of the agreement. They're not claiming any relationship with the plaintiff. Whether they claim to be part of the agreement or not doesn't ever matter, but the relationship is the one that we have said should be examined closely. And it wasn't, obviously. It wasn't, obviously. And if, look, if they want to say, look, we were joint employers and therefore we'll invoke the agreement, we might be fine with that. We don't mind having them as joint employers in the case. But you can't have it every which way, especially in the FLSA, which does not recognize estoppel as a means for denying people liability here, going back to the Casarte case by Judge Friendly in 1959. So that is a major problem. You might be able to stretch that in a different area, but not here. And if you're saying that it should be based on equitable estoppel, how about satisfy the requirements for equitable estoppel? I think what they were saying, and as I pointed out in my brief, they're basically saying, well, you know, arbitration is like the wild, wild west. We don't have to prove anything anyhow. We're going to arbitration, come hell or high water. But it can't work that way. Arbitration contracts, as they claim, should be placed on equal footing with other contracts. And if that be the case, if you're invoking estoppel, satisfy the requirements of estoppel, and in the manner that this Court required. Do a hearing, find out the actual relationship of the parties, and make a finding that estoppel is present and do special analysis, given that we're in an area where estoppel generally doesn't preclude liability in FLSA cases. Thank you. Thank you. You've reserved three minutes for rebuttal. We'll hear from Parts Authority. Good morning, Your Honors. May it please the Court, Andrew Marks on behalf of Parts Authority, as well as Northeast Logistics and Michigan Logistics. We've had an argument already, Bynum has argued, so I think we know what the issues are, and I think the issue then becomes whether there's anything special about the FLSA that would distinguish it from many other statutes where the Supreme Court said you could arbitrate claims, whether that's ERISA or the ADA and Gilmer. In each of these cases, the courts examined and said, what is it in the statute that says you can't arbitrate a case, and there's nothing there. And we know that it's plaintiff's burden of proof to come forward and say, this is what the FLSA says, why we can't arbitrate a claim. We also know that the Supreme Court has multiple times, and this Court as well, and Sutherland and other decisions said— They do come forward with Barenteen. Excuse me, Your Honor? They do come forward with Barenteen. Well, Barenteen, let's not—look, let's not ignore the facts, because you could say what the facts are, whatever you want, but there was no arbitration in Barenteen. In Barenteen, several union drivers brought a contract claim saying the contract entitles me to wages. And then when they sought to bring that claim in court, the company said, well, no, you're barred by that because you've already litigated that. It never really came up as to the question of whether there was an arbitration under the contract because they didn't cover that. The language of the Supreme Court in that case and in other cases suggested very strongly that at that time the FLSA was being treated as a separate case, as a different case. Now, whether the fact that it's a different statute from these others is enough to make out in the face of the FAA the argument, that's a different one. But, yeah, there is certainly a long history of treating the FLSA as different from other statutes. Well, the Supreme Court has not addressed many cases where it's treated differently. If you want to go back to the 1940s, there was no Title VII, there was no ADA, there was no Americans with Disabilities Act. None of those protective statutes existed. And it was a very different court. And the court now is different because if you look at 14 Penn Plaza, Pyatt v. 14 Penn Plaza, they narrow Barentine very much to the idea that it involved a collective bargaining agreement and a union's attempt to waive the rights and not an individual. And even in 14 Penn Plaza, I don't know that Barentine would survive that today. If that case were brought, I think the 14 Penn Plaza case, which said when the agreement specifically says you can arbitrate, you will bring your ADA claim before the arbitration under the collective bargaining agreement, the Supreme Court said, yes, we will go in and enforce that. And that's been the law since, I think, 1991. Even if we agreed with you that the Supreme Court is now moving very strongly in your direction, if they haven't gotten to the point of controlling this case, and we think they're wrong because arbitration in this kind of context is not appropriate, do we have to follow where the Supreme Court is going? Or isn't it our duty to say where we think they ought to go? Well, that's a softball question for me to say no. You're not bound by no Supreme Court precedent. But I do think you're bound by Sutherland, which said that FLSA claims are arbitrable. They've already addressed that issue. And it's not enough to say, well, they said you could waive or we're going to arbitrate the claim because you brought it as a class action. Now we're going to compel you to arbitrate individually. You can't now say, well, now you can't compel arbitration individually. It's certainly encompassed by that decision. And we know that in a subsequent case in Raymore-Flanagan where the court said, well, we might not agree with Sutherland, but it is the law of this circuit. And they felt bound by it, as this panel was bound by that decision, which compelled arbitration. Now, if you ask me what the FLSA and why is that different than any other statute, I don't know. Let's take a look at it. One, there's myriad exceptions to both the overtime and the minimum wage claims under the FLSA. You could be in some industry like newspapers or farming or recreation where the FLSA doesn't apply. I don't know how that's uniquely protective. It also sets a minimum wage that if you get enough money, then it's complied with. It also, if we look at the two early Supreme Court cases. I'm not sure how those cut the fact that there are some areas that Congress didn't choose to protect. Well, we're saying that it's uniquely protected. They suggest that those areas where they did choose to protect are particularly protected. I mean, one can argue it either way. Okay. I'm not, I don't agree with that. I mean, the Supreme Court never used the term uniquely protective. That case originated with, Your Honor, Judge Pooler in Cheeks. And I think you have to go back and look at the history. I've always followed Judge Pooler, more than the Supreme Court. Well, you have to live with her. But even the Supreme Court cases which said you can't waive a right was not congressional intent because if you look at the Portal to Portal Act, it said, well, we're going to overrule those cases, at least allow you to settle those claims. So the Supreme Court was not looking at congressional intent. And what the FLSA was intended to do was put more people to work. It was a depression-error legislation. And it said, you must pay these people more so that it's disincentive to work more than 40 hours. I don't think that's uniquely protective. I think it just was one of the first pieces of social legislation that survived the Supreme Court challenges on constitutional grounds. And since that time, we've had dozens. And since that time, the Supreme Court has said in all of those, and the language of the idea is virtually identical with respect to the right to bring your action in court, and there's nothing in there that the Supreme Court said would prevent arbitration. Do you think the umbrella ruling that statutory rights are arbitrable? Excuse me? Do you think that the umbrella ruling that statutory rights are arbitrable covers the FLSA as well as the other statutes to which arbitration has been applied? Yes. Unless, without identifying, and I can't see it, anything specifically different about the FLSA than any of those other statutes, particularly the ADA, which was actually brought within the FLSA. It was not part of Title VII. You know, it's part of 29 U.S.C. Could you address for a moment the argument that there wasn't a careful look at the relationship for purposes of binding these parties? There was a careful look. We cited, and if there wasn't a careful look, it's because the argument wasn't made. We cited numerous precedents, as Mr. Hasan has pointed out. It's not the first case where joint employers have been sued. And in the Ragone v. ESPN case, this is virtually identical to that. The allegation is that I'm in a contract with you, and you put me here, and I'm going to sue you as joint employers under the FLSA. And cases are, you know, it certainly extends to that under an estoppel theory. There would be no relationship between the driver and parts authority but for the contract between the driver and diligence. So I certainly think that not much is necessary, but certainly we briefed it and would have briefed it more had he raised it more, and we certainly cited precedent to that effect. Thank you. Thank you. Mr. Hasan, you have reserved three minutes for rebuttal. Yes, Your Honor. Your Honor, I just wanted to make sure the court had the FRAP 28 letters where we had addressed the Microsoft Baker case and then the court's recent decision in National Labor Relations versus Long Island Association for AIDS Care. Your Honor, in terms of the FLSA, I know Mr. Marks very well. I litigated with him a lot. These arguments were rejected by the Supreme Court and this court many decades ago. But I see defense attorneys, they make these arguments every single case. Your Honor, that's a Depression Era statute and it doesn't work . . . What about recently? You say they made these arguments a long time ago. What about recently? Isn't the Supreme Court heading toward requiring arbitration whenever they can? Well, I don't think so and let me tell you why. The Supreme Court has been very good in FLSA cases. A lot of these FLSA cases that go up, they run nine to zero. I think what they've shown is they will stick to precedent. They're not going to upset 60, 70 years of precedent. Even the conservative members of the court are usually loyal to the court's precedent in this area. As Judge Calabresi said, we have to deal with the law as it is, not what it might be. Who knows what the law might be? Who knows what tomorrow will bring? Nobody knows that. But the law as it exists, as I keep pointing out, there's one Supreme Court case dealing with arbitration under the FLSA and in that the court rejected arbitration. The reasons it did so are important and those reasons apply with equal or greater force in this case. Counsel mentioned, we did argue below, Your Honor, that these parties never signed this agreement and are not part of the agreement and they're not even claiming to be an employer. There's another issue here, Your Honor, that we haven't addressed fully, and that is these workers are transportation workers who were excluded under the FLSA. Not the FLSA, the FAA. They're very much included under the FLSA, but they're excluded under the FAA, which does not apply to transportation workers. That argument you never made below. I agree, but just in case you want another. But, you know, if you didn't make that argument, it's not before us. Well, Your Honor, let me point out, you can still consider it if there's not a need for additional factual development, which there isn't, and it's up to you. It's in your discretion. You can do it. You can not do it. But I think there's plenty here in which to conclude that the FLSA claims are not arbitrable, especially based on Barantine, especially based on this Court's famous decision in Cheeks v. Freeport Pancake that give additional lift to Barantine and the reasons stated there, as well as the Supreme Court decisions from the 1940s, which continue to control this area. The main point that FLSA claims are different from other claims are adequately and powerfully backed up by the jurisprudence and the law, and I kindly ask you to reverse the orders compelling arbitration in both cases. Thank you. Thank you both. That will reserve decision.